JS6.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3831 | **DATE** | 11/12/2003 |
| **CASE TITLE** | Joseph Ienco vs. Kenneth Angarone, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___ ___.
(4) ☐ Ruling/Hearing on ___ ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ ___ at ___ ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ ___ at ___ ___.
(7) ☐ Trial[set for/re-set for] on ___ ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [79-1] is granted. This case is hereby dismissed with prejudice. Trial set for 1/2/04 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | NOV 13 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | | 95 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | RO | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 1 3 2003

JOSEPH IENCO,

      Plaintiff,

v.

KENNETH ANGARONE, individually
and in his official capacity as a member
of the Chicago Police Department, and
THOMAS MCGANN, individually and
in his official capacity as a member of
the Chicago Police Department,

      Defendants.

No. 00 C 3831

Judge Ruben Castillo

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Ienco sued Chicago police officers Kenneth Angarone and Thomas McGann for civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1988, arising from the officers' arrest of Ienco in 1994. Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendants' motion is granted. (R. 79-1.)

### RELEVANT FACTS

In August 1994 Ienco and his business associate, Gregory Iovine, traveled from New York to Chicago to collect a debt from Chicago businessman Jerome Greenberg. When the duo arrived at his office Greenberg called the police and Chicago police officers Angarone and McGann responded to the call. The officers arrived at Greenberg's building shortly thereafter and approached Ienco and Iovine as they were leaving the building. (R. 80, Def.'s Facts, ¶ 17.) Angarone asked the two men why they were at the building and whether they were carrying any



identification. (*Id.* at ¶ 18.) According to Ienco, both he and Iovine gave the officers their driver's licenses. Using this identification, Angarone then ran a search on their names in the Illinois State Police database. At Angarone's request or direction, the men sat in the police car while the officers continued their investigation. According to Ienco, Angarone then got into the squad car with Ienco's identification and began "punching numbers into something on he [sic] dashboard."[1] (*Id.* at ¶ 21.) Afterwards, Angarone went into the building to speak to Greenberg, who positively identified Ienco and Iovine as the men who earlier had threatened him. (*Id.* at ¶ 24.) Greenberg signed criminal complaints for assault and trespass against the two men, and they were transported to the police station to be processed for misdemeanors.

Later, as the officers searched the squad car, they found keys to a minivan that Ienco had rented. The officers returned to Greenberg's building, located the minivan and conducted a search, in which they found several pieces of incriminating evidence. This incriminating evidence was used, at least in part, to convict Ienco on charges of conspiracy to commit extortion, 18 U.S.C. § 1951, interstate travel in aid of racketeering, 18 U.S.C. § 1952, and using or carrying firearms during and in relation to a crime of violence, 18 U.S.C. § 924(c). Ienco moved to suppress this evidence at trial, which was denied, and later appealed both his criminal conviction and the denial of the motion to suppress. Finding errors in the original trial, the Seventh Circuit remanded the case for a new suppression hearing and trial. *United States v.*

---

[1] Officers Angarone and McGann provided a different version of the events in a police report filed later that day. According to that report, after the officers saw Ienco and Iovine leave the lobby of Greenberg's building, they "stopped the subjects for [a] field interview at which time [Ienco and Iovine] stated that they had no identification." (R. 84, Pl.'s Facts, Ex. 1, Aug. 29, 1994 Police Report.) Angarone repeatedly testified that he became suspicious of the two men when, during a protective sweep of the men's waistbands, he detected a billfold in Ienco's back pocket, which contradicted their statements that they were without identification.

2

*Ienco*, 92 F.3d 564 (7th Cir. 1996). At the second suppression hearing, Ienco introduced for the first time a report generated from the Illinois State Police NCIC/LEADS database that his counsel had subpoenaed for the hearing. The report demonstrated that the officers did indeed have Ienco's identification within minutes of arriving at the scene, because the officers called the details of Ienco's driver's license into the database to run a check on him less than five minutes after receiving the 911 dispatch.[2] The district court determined that the arresting officers' testimony regarding the circumstances surrounding Ienco's arrest was not credible, that Ienco had been arrested without probable cause and that, therefore, evidence uncovered after Ienco's arrest should be suppressed; the government then withdrew its indictments.

Ienco subsequently filed the instant civil rights case. At the conclusion of discovery, Defendants filed a successful motion for summary judgment. This Court concluded that under the facts of the case Ienco could not pursue a malicious prosecution theory against either the officers or the City because Ienco had failed to prove that the proceedings were terminated in a manner indicative of his innocence, which is required by state law. *See Ienco v. City of Chi., et al.*, 148 F. Supp. 2d 938, 945 (N.D. Ill. 2001). On appeal, the Seventh Circuit partially affirmed this Court's decision as to the City, but reversed and remanded our decision as to the officers, noting that a change of law had occurred between this Court's decision and Ienco's appeal. *Ienco*

---

[2] The fact of whether or not the officers possessed Ienco's identification at the outset is relevant for two reasons. First, if it were true that Ienco denied having identification when the officers first asked, Angarone's detection of a billfold when he performed his protective sweep would have provided reasonable suspicion of wrongdoing that may have justified a *Terry* stop. *Corbett v. White*, No. 00 C 4661, 2001 WL 1098054, at *5 (N.D. Ill. Sept. 17, 2001). Second, Ienco's story that the officers kept his identification and billfold after placing the men in the squad car and while they met with Greenberg and otherwise continued investigating could support a finding that the men technically were arrested before the officers had probable cause to do so.

3

*v. City of Chi.*, 286 F.3d 994, 998-99 (7th Cir. 2002). Relying on its recent decision, *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), the Seventh Circuit concluded that Ienco could pursue a claim for a violation of his due process rights under the Fourteenth Amendment and was entitled to take advantage of this change in the law on remand. *Id.* at 999. On remand, Ienco amended his complaint and alleged that Defendants violated his due process rights when they falsified police reports, lied to federal prosecutors and withheld exculpatory information.

## LEGAL STANDARDS

We will grant a motion for summary judgment when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the Court must view all evidence in the light most favorable to the non-moving party and draw all inferences in the non-movant's favor. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2003).

## ANALYSIS

In order to state a claim under 42 U.S.C. § 1983, Ienco must establish that Defendants were acting under the color of state law when they deprived him of a federal right. *Ienco*, 286 F.3d at 997-98. In *Newsome*, the Seventh Circuit defined the contours of a § 1983 due process claim based on allegations that the plaintiff did not receive a fair trial because the investigating police officers deliberately withheld material exculpatory evidence from prosecutors. *Newsome*, 256 F.3d at 752 (*citing Brady v. Maryland*, 373 U.S. 83 (1963)); *see also Ienco*, 286 F.3d at 998-

99. Thus, inherent in a successful § 1983 due process claim under *Newsome* is proof that the officers (and thus, derivatively, the prosecutors) violated the rule set forth in *Brady v. Maryland*. Indeed, the Seventh Circuit recently clarified that the *Newsome* rule links an officer's failure to disclose exculpatory evidence with the prosecutor's *Brady* obligations. *Gauger v. Hendle*, No. 02-3841, 2003 WL 22455958, at *5 (7th Cir. Oct. 30, 2003) (finding, however, that Gauger's extension of *Brady* in his due process claim "difficult even to understand" and rejecting Gauger's efforts "to make every false statement by a prosecution witness the basis for a civil rights suit"). Thus, we focus on *Brady* as the nexus of Ienco's due process claim.[3]

Under *Brady* the government must disclose evidence favorable to the defense where the evidence is material to either the guilt or punishment of the defendant. *Brady*, 373 U.S. at 87; *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002). A *Brady* violation occurs when the government withholds evidence that, had it been disclosed, creates a reasonable probability that

---

[3] We also note, however, that *Ienco* and subsequent cases relying on it have, in rejecting officers' claims of absolute immunity, lumped together the concepts of "withholding exculpatory information" and "the initiation of constitutionally infirm criminal proceedings." *See Ienco*, 286 F.3d at 1000; *see also McCullah v. Gadert*, 344 F.3d 655, 661 (7th Cir. 2003) (noting "distinction between claims directed at allegedly perjurious testimony, which are trial-based and thus foreclosed by absolute immunity and claims based on the withholding of exculpatory information or the initiation of constitutionally infirm criminal proceedings, which are outside of trial and not subject to that particular immunity"). Nevertheless, we believe the due-process inquiry and any immunity inquiries are separate and therefore cannot accept Ienco's argument that *Newsome* is satisfied by allegations that a prosecutor's decision to initiate or continue criminal proceedings was tainted by officers' misrepresentations, especially where, as here, those falsehoods related solely to whether the officers had probable cause to arrest the defendant. Importantly, in this case there is no evidence that the defendants gave false testimony in order to persuade prosecutors to indict Ienco. Instead, the alleged false testimony in this case ultimately benefitted Ienco by undermining the credibility of the defendants in a manner that led to the direct suppression of evidence prior to Ienco's retrial. Ienco has established no causal connection between the alleged false testimony and his prosecution, which was well underway at the time of the disputed testimony. In any event, we believe such inquiries are immaterial for purposes of *Brady* and are more salient to a false-arrest claim, which the parties agree, and the Seventh Circuit has held, is time-barred. *See Ienco*, 286 F.3d at 1001-01.

5

the result of the trial would have been different. *Tadros*, 310 F.3d at 1005. Thus, Ienco must show that: (1) the government suppressed evidence; (2) the evidence was favorable to the defense, either because it was exculpatory or had impeachment value; and (3) the evidence was material to an issue at trial. *Id.*; *see also Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (holding that suppression of impeachment evidence can give rise to a *Brady* violation).

Defendants first argue that summary judgment is appropriate because Ienco has not established that any evidence was "suppressed" for purposes of *Brady's* first prong. Defendants point out that Ienco was aware of the information that he claims was withheld from him and that Ienco easily could have obtained it. Indeed he later did obtain the NCIC/LEADS report through a simple subpoena and the exercise of reasonable diligence. Defendants further argue that the evidence was not material and, in any event, Ienco cannot show that the officers deliberately withheld the NCIC/LEADS report. In response, Ienco offers no *Brady* analysis, and instead focuses on the fact that the officers generally violated his constitutional rights by their behavior during his arrest and their deceit in covering up an otherwise illegal arrest. We believe that *Newsome* somewhat narrowed the inquiry first articulated in *Jones*, and thus Ienco's reliance on *Jones* rather than *Newsome* is unavailing. *Compare Newsome*, 256 F.3d at 752 (holding that § 1983 plaintiff has a due process claim in the sense that he did not receive a fair trial if the prosecutors withheld material exculpatory details due to police conduct) *with Jones*, 856 F.2d at 994 (holding that a § 1983 claim may lie against a police officer who deliberately supplied misleading information that influenced a prosecutor's decision to charge, a grand jury's decision to indict and a prosecutor's decision not to drop charges but to proceed to trial). Even if Ienco

had provided this Court with an analysis pursuant to *Brady*, however, we believe that Ienco's due process claim under *Newsome* nevertheless would fail.

Turning to the first prong of the *Brady* rule, three concepts are at play in determining whether the government "suppressed" evidence: knowledge, possession and the availability of the information to the defendant. The rule requiring prosecutors in criminal proceedings to disclose information is limited to information known to the prosecution. *See United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997); *Mendoza v. Miller*, 779 F.2d 1287, 1297 (7th Cir. 1985) (*citing Giglio*, 405 U.S. at 150). Thus, there is "no affirmative duty on the part of the government to seek information not in its possession when it is unaware of the existence of that information." *Earnest*, 129 F.3d at 910; *Tadros*, 310 F.3d at 1005.[4] Nor does *Brady* require the government to gather information on the defendant's behalf. *Id.* Furthermore, evidence is not "suppressed" in the *Brady* sense when the defendant has access to the evidence before trial by the exercise of reasonable diligence. *Earnest*, 129 F.3d at 910; *United States v. Romo*, 914 F.2d 889, 899 (7th Cir. 1990) (noting that defendant's trial counsel could have subpoenaed local police agency, including local custodian of records, to find potentially exculpatory material and that counsel's strategic decision or mere failure to do so would not be imputed to prosecutors as a

---

[4] The Chicago police officers, although they made the initial arrest and searches, did not conduct the investigation into the federal crimes for which Ienco ultimately was charged. In that sense, Angarone and McGann served more as eyewitnesses for purposes of the "suppression" prong of the *Brady* test, than as investigative arms of the prosecution. *See Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (affirming district court's conclusion that *Brady* did not require the government to seek out allegedly exculpatory information in the hands of other federal agencies when it had been unaware of the existence of that information because none of those agencies were part of the team that investigated case or participated in its prosecution); *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991) (focusing on the "prosecution team," which includes both investigative and prosecutorial personnel). Unlike *Newsome* and *Jones*, where the officers who withheld exculpatory information were part of the investigative team, the investigative role of Defendants here ended when the case was turned over to federal prosecutors.

*Brady* violation). That said, however, the Seventh Circuit has found it "improper for a prosecutor's office to remain ignorant about certain aspects of a case or to compartmentalize information so that only investigating officers, and not the prosecutors themselves, would be aware of it." *Morris*, 80 F.3d at 1169.

In this case, we believe that the evidence was not suppressed for purposes of *Brady*. First, we agree with Defendants that if the allegedly withheld evidence is the fact that Ienco provided identification upon the officers' request, Ienco already possessed this piece of information —he was present at the scene when the defendants asked for his identification. *See Gauger v. Hendle*, No. 99 C 50322, 2002 WL 31130087, at *6 (N.D. Ill. Sept. 24, 2002), *rev'd in part on other grounds*, 2003 WL 22455958, at *8 (7th Cir. Oct. 30, 2003). As for the NCIC/LEADS information, the record is devoid of evidence that either the officers or the prosecution in the criminal case ever possessed or were even aware of the NCIC/LEADS report prior to Ienco's second suppression hearing. Furthermore, Ienco has offered no explanation as to why he could not have procured the information himself or that he was unable at the time to obtain the information on his own. Indeed, he demonstrated how easily he obtained the information by simply issuing a subpoena for it at his second suppression hearing. He certainly could have had that information sooner had his trial counsel followed Ienco's version of the story to its conclusion. That is, Ienco consistently maintained that the officers immediately took his identification and then called it in to a centralized location. Someone or some entity on the other end of the line certainly intercepted that information and could have testified to its receipt, including the timing of the officers' request and the information the officers obtained in response. Therefore, we do not believe that the evidence was suppressed.

8

Second, and more fundamentally, we do not believe that Ienco's claim satisfies *Brady's* requirement that the allegedly suppressed information be material to an issue concerning Ienco's guilt or punishment at trial. *See Brady*, 373 U.S. at 87. In the context of an alleged *Brady* violation, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)) (internal quotations omitted). We do not see how the allegedly suppressed information in this case is material to Ienco's guilt and punishment. *Conner v. Anderson*, 259 F. Supp. 2d 741, 768-69 (S.D. Ind. 2003) (psychologist's report was not material to defense at either the guilt or penalty phases of the trial). *Cf. McCullah*, 344 F.3d at 656 (statements in officer's report convinced prosecutor to file criminal felony charges against McCullah); *Newsome*, 256 F.3d at 752 (officers' failure to alert prosecutors that Newsome's fingerprints did not match those at the scene of the crime and that they "encouraged" two witnesses to select Newsome from a lineup "form[ed] a vital link in the process that led to Newsome's conviction.").[5]

The information contained within the NCIC/LEADS database, as well as the officers' false testimony regarding Ienco's willingness to produce identification, related solely to the

---

[5] Even *Jones*, a case whose due-process inquiry we believe was narrowed by *Newsome*, is factually distinguishable on materiality grounds if applied to this case. In *Jones* the Seventh Circuit found that the officers "systematically concealed from the prosecutors, and misrepresented to them, facts highly material to . . . the decision whether to prosecute Jones and whether [to take the case to trial]." *Jones*, 856 F.2d at 993. Specifically, the officers in *Jones* hid evidence "militating against Jones's guilt, including the fact that [the victim's] description did not fit him and that [the victim] initially had failed to identify him as the assailant." *Id.* Thus, unlike the instant case, the information withheld in *Jones* certainly was material to the defendant's guilt or punishment at trial.

9

propriety of Ienco's initial arrest and, unlike the above-cited cases, did not have any relevance to Ienco's conviction on the extortion, racketeering and firearms charges. The information was relevant to impeaching the officers' explanation at the suppression hearing as to why they had probable cause to detain and arrest Ienco, but the Seventh Circuit has never squarely held that *Brady* applies to suppression hearings. *See United States v. Stott*, 245 F.3d 890, 901-02 (7th Cir. 2001). And, although Ienco could have used the report to impeach the defendants' testimony regarding the arrest, such impeachment does not go to Ienco's guilt or innocence, and thus does not fall within the parameters of *Brady*. *See Giglio*, 405 U.S. at 154 (noting that when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the *Brady* rule.); *see also Bagley*, 473 U.S. at 677. Ienco simply failed to satisfy *Brady*'s materiality prong.

Finally, we agree with Defendants that Ienco is attempting to shoehorn a time-barred false-arrest claim into the strictures of the due process remedy articulated in *Newsome*. We agree with the Seventh Circuit that culpable officers must be held responsible for their actions when their deliberate deceit prejudices a defendant's constitutional right to a fair trial, *see Newsome*, 256 F.3d at 752; *Jones*, 856 F.2d at 994-95, but the undisputed facts developed on remand proves that Ienco's fair-trial and due-process rights were not violated in this case.

Although the Seventh Circuit in *Gauger* did remand so that the plaintiff could pursue a false-arrest claim on appeal, *see Gauger*, 2003 WL 22455958, at *7, that door is not open to Ienco in this case for three reasons. First, although Ienco did allege an amorphous Fourth Amendment claim in his initial complaint, he abandoned that claim during the course of litigation and instead focused solely on his malicious prosecution claim. In fact, we explicitly noted in our first

10

summary judgment opinion that Ienco had abandoned and waived any Fourth Amendment claims. *Ienco*, 148 F. Supp. 2d at 940 n.1. Ienco did not challenge our findings on appeal and therefore may not now renew his previously abandoned Fourth Amendment claims. *Duncan v. Wis. Dep't of Health and Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999) (noting that a party must develop any arguments it wishes the court to consider, or they will be deemed waived or abandoned). Second, the Seventh Circuit previously has held that Ienco's false-arrest claim is time-barred, *see Ienco*, 286 F.3d at 1000-01, and therefore any renewed assertion of a false-arrest claim at this point would be prohibited by the law-of-the-case doctrine. *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988) (noting that ordinarily matters decided in a prior appeal become law of the case to be followed in later proceedings). Finally, we do not believe that the reasoning of *Gauger* applies in this case. In *Gauger* the Seventh Circuit held that the plaintiff's false-arrest claim was not time-barred because it did not accrue until the charges against him were dropped some three years after his initial arrest. The court noted that without the statements stemming from Gauger's arrest, which were later found inadmissible because he was arrested without probable cause, he could not have been convicted of murder beyond a reasonable doubt. *Gauger*, 2003 WL 22455958, at *6. The *Gauger* court started its analysis with the general principle that "[a] constitutional claim that if vindicated would undermine a state conviction cannot be filed until the conviction is nullified." *Id.* (*citing Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). The court further noted that in false-arrest cases the general rule is that such claims typically do not undermine a conviction, and thus arise (and the statute of limitations begins to run) when the arrest is made. *Id.* The Seventh Circuit concluded that this rule does not apply in all cases, nor specifically in Gauger's, because

11

Gauger's statements after his illegal arrest were so crucial to his conviction that any false-arrest claim could not arise until the conviction was nullified. *Id.* We do not believe that the same holds true in Ienco's case. Ienco ultimately was convicted on extortion, racketeering and firearms charges. With the exception of the firearms charge, none of the evidence stemming from Ienco's illegal arrest was the linchpin of his subsequent conviction. The elements of the extortion and racketeering charges potentially could have been proven beyond a reasonable doubt even in the absence of the weapons and other materials recovered as a result of Ienco's illegal arrest. *See* 18 U.S.C. §§ 1951, 1952. Ienco's false-arrest claim did not impugn his conviction in the same way that Gauger's did. Therefore, even if we were to reach the question whether Ienco's false-arrest claim survives under the reasoning of *Gauger*, we would hold that it does not.

## CONCLUSION

This Court must follow the direction of the Seventh Circuit Court of Appeals. After our first grant of summary judgment, the Seventh Circuit decided to give Ienco a chance to assert a theory of liability that had just evolved pursuant to the *Newsome* decision. Yet, especially in light of the Seventh Circuit's recent *Gauger* decision, we are reluctant to expand *Newsome's* narrow due process remedy to encompass Ienco's claim, even though we agree in principle with Ienco that the police officers' deceitful conduct in this case should not be sanctioned. Unfortunately for Ienco, the proper remedy was a false-arrest claim, which is now barred by the statute of limitations. Thus, we must grant the defendants' motion for summary judgment. (R. 79-1.) Because we find that the officers' actions did not violate Ienco's due-process rights under the *Newsome* test, we need not decide whether they are also entitled to qualified immunity.[6]

---

[6] In his response brief Ienco also moved for sanctions and to refer the defendants and their counsel to the Department of Justice for filing what he believed to be a frivolous summary

12

The Clerk is instructed to enter final judgment pursuant to Federal Rule of Civil Procedure 58 against Ienco.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: November 12, 2003

---

judgment motion. Given our disposition of this case, however, we do not believe that Ienco's request is warranted and we therefore deny his motion.

13